UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN CLARIZIA, *et al.*, individually and on behalf of all others similarly situated, | ECF Case |
| Plaintiff, | No. 13 Civ. 02907 (ALC) |
| vs. | **DECLARATION OF RONALD K. WILSON REGARDING JOHN CLARIZIA** |
| OCWEN FINANCIAL CORPORATION, *et al.*, | |
| Defendants. | |

I, Ronald K. Wilson, declare as follows:

1. My name is Ronald K. Wilson. I make this declaration pursuant to the provisions of 28 U.S.C. § 1746. The statements set forth in this declaration are based upon my personal knowledge and a personal review of the business records of Defendant American Security Insurance Company ("ASIC"), and the Declaration of Rebecca H. Voyles filed in this case contemporaneously herewith (the "Voyles Declaration" or "Voyles Dec."). I have reviewed the Second Amended Class Action Complaint in this case.

2. I am over 21 years of age and competent to testify to the statements set forth in this declaration.

3. I make this declaration to document the circumstances surrounding the issuance of flood insurance coverage by ASIC to plaintiff John Clarizia and defendant Ocwen Loan Servicing, LLC to protect the improvements on real property located at 21 Unicorn Circle, Amesbury, Massachusetts 01913 (the "Clarizia Property").

4. I am the Vice President of Account Management with Assurant Specialty Property. Assurant Specialty Property ("ASP") is a trade name and service mark sometimes

1

used by various companies, including ASIC, that provide lender-placed insurance and outsourcing solutions. My duties include managing lender-placed and insurance monitoring programs for lenders and loan servicers with whom ASP companies work. Ocwen Loan Servicing, LLC and related entities, including Ocwen Financial Corporation (collectively "Ocwen") is one of the lenders/loan servicers with whom ASP insurance companies work, and I manage and oversee the processes and procedures these companies use in carrying out their work for Ocwen.

5. I am familiar with ASIC's duties to track borrower compliance with insurance obligations and to place lender-placed insurance for Ocwen's loan servicing portfolio. Those duties arise under agreements with Ocwen and under policies and procedures developed by Ocwen. Assurant, Inc., is not a party to those agreements. Pursuant to those agreements, policies and procedures, ASIC is required, among other things, to (a) monitor the status of insurance coverage on properties where the deed of trust/security deed/mortgage indebtedness is serviced by Ocwen, (b) place appropriate policies on those properties in favor of Ocwen if the homeowner/borrower fails to provide evidence of acceptable insurance coverage to Ocwen, or if the insurance coverage obtained by the homeowner/borrower lapses, is insufficient, is not acceptable, or becomes unacceptable, and (c) cancel the placed coverage if evidence of other acceptable insurance coverage on the property is provided by or on behalf of the homeowner/borrower. Among other things, Ocwen authorizes and directs ASIC to send letters on Ocwen letterhead to homeowners/borrowers under mortgages, security deeds, or deeds of trust serviced by Ocwen when such homeowners/borrowers do not provide evidence of acceptable insurance coverage to Ocwen. In addition, ASIC tracks the insurance coverage status of properties in Ocwen's portfolio to properly assess the risk to the portfolio in order to manage

capital levels, obtain reinsurance, set claim reserves, and determine claim and other insurance processing resource needs.

6. Pursuant to the agreements with Ocwen, ASIC monitored insurance coverage on the Clarizia Property, which secures a loan to Mr. Clarizia serviced by Ocwen. I have reviewed ASIC's business records regarding Mr. Clarizia's loan, which include information such as the terms and limits of the insurance coverage for the Clarizia Property placed by Ocwen, as well as the premiums charged for such coverage.

7. Attached hereto as Exhibit A is a true and correct copy of a letter sent to Mr. Clarizia on or about February 12, 2011.

8. Attached hereto as Exhibit B is a true and correct copy of a letter and insurance binder issued by ASIC sent to Mr. Clarizia on or about March 12, 2011.

9. Attached hereto as Exhibit C is a true and correct copy of a letter sent to Mr. Clarizia on or about April 9, 2011.

10. Attached hereto as Exhibit D is a true and correct copy of a letter and policy issued by ASIC sent to Mr. Clarizia on or about May 21, 2011. This coverage provided flood insurance for the Clarizia Property with limits of liability of $250,000 for the period from March 27, 2011 to March 27, 2012 ("2011 Clarizia Policy"). The annual total charged for the 2011 Clarizia Policy was $2,250.00.

11. Attached hereto as Exhibit E is a true and correct copy of a letter sent to Mr. Clarizia on or about March 4, 2012.

12. Attached hereto as Exhibit F is a true and correct copy of a letter sent to Mr. Clarizia on or about April 7, 2012.

13. Attached hereto as Exhibit G is a true and correct copy of a letter and policy

issued by ASIC sent to Mr. Clarizia on or about May 26, 2012. This coverage provided flood insurance for the Clarizia Property with limits of liability of $250,000 for the period from March 27, 2012 to March 27, 2013 ("2012 Clarizia Policy"). The annual total charged for the 2012 Clarizia Policy was $2,250.00.

14. Exhibits A through G to this declaration are retained as business records of ASIC, and are maintained in the ordinary course of business.

15. The annual premiums charged for the 2011 and 2012 Clarizia Policies were calculated based on premium rates that were filed by ASIC with the Massachusetts Division of Insurance ("MADOI"), and approved by the MADOI. *See* Voyles Declaration and Clarizia Policies. The rates approved by the MADOI in the August 1, 1996 and April 2, 2001 filings (the "Flood Filings") were applicable to the Clarizia Policies because they were issued in 2011 and 2012. *See* 2011-2012 Clarizia Policies; Voyles Dec. ¶¶ 8-9 and Exhibits 4-7 thereto. Attached hereto as Exhibit H is a copy of the applicable Manual Pages from the Voyles Declaration that show that the premiums charged for the Clarizia Policies were based upon filed and approved premium rates. *See* Voyles Dec. Exhibits 6-7.

16. The approved rate filings provide that residential properties located in all Zones other than "V" Zones have an annual premium rate of $0.90 per $100 of coverage. Exhibit H. The Clarizia Property is located in zip code 01913, and is not located in a "V" Zone.

17. The annual premium amount charged for the 2011 Clarizia Policy was calculated based on the rates reflected in the Flood Filings, as follows:

The premium rate applicable to the 2011 Clarizia Policy was $0.90 per $100 of coverage. The 2011 Clarizia Policy provided limits of liability in the amount of $250,000. Exhibit D at 3 (Declarations page). The annual premium amount was calculated as follows:

4

$0.90 \times 2500 = \$2,250.00$

18.     The annual premium amount charged for the 2012 Clarizia Policy was calculated based on the rates reflected in the Flood Filings, as follows:

The premium rate applicable to the 2012 Clarizia Policy was $0.90 per $100 of coverage. The 2012 Clarizia Policy provided limits of liability in the amount of $250,000. Exhibit G at 3 (Declarations page). The annual premium amount was calculated as follows:

$0.90 \times 2500 = \$2,250.00$

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on January 10th, 2014.

                                                                               Ronald K. Wilson

265174v2DC