UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN CLARIZIA, *et al.*, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>OCWEN FINANCIAL CORPORATION, *et al.*,<br><br>Defendants. | ECF Case<br><br>No. 13 Civ. 02907 (ALC)<br><br>**DECLARATION OF RONALD K. WILSON REGARDING FRANCES AND JOHNNIE ERVING** |

I, Ronald K. Wilson, declare as follows:

1. My name is Ronald K. Wilson. I make this declaration pursuant to the provisions of 28 U.S.C. § 1746. The statements set forth in this declaration are based upon my personal knowledge and a personal review of the business records of Defendant American Security Insurance Company ("ASIC"), and the Declaration of Rebecca H. Voyles filed in this case contemporaneously herewith (the "Voyles Declaration" or "Voyles Dec."). I have reviewed the Second Amended Class Action Complaint in this case.

2. I am over 21 years of age and competent to testify to the statements set forth in this declaration.

3. I make this declaration to document the circumstances surrounding the issuance of flood insurance coverage by ASIC to plaintiffs Frances and Johnnie Erving and defendants Saxon Mortgage Services, Inc. and/or Ocwen Loan Servicing, LLC to protect the improvements on real property located at 216 SW 10th Street, Hallandale, Florida, 33009 (the "Erving Property").

4. I am the Vice President of Account Management with Assurant Specialty

1

Property. Assurant Specialty Property ("ASP") is a trade name and service mark sometimes used by various companies, including ASIC, that provide lender-placed insurance and outsourcing solutions. My duties include managing lender-placed and insurance monitoring programs for lenders and loan servicers with whom ASP companies work. Saxon Mortgage Services, Inc. ("Saxon") and Ocwen Loan Servicing, LLC and related entities, including Ocwen Financial Corporation (collectively "Ocwen") are two of the lenders/loan servicers with whom ASP insurance companies work, and I manage and oversee the processes and procedures these companies use in carrying out their work for Saxon or Ocwen.

5. I am familiar with ASIC's duties to track borrower compliance with insurance obligations and to place lender-placed insurance for Saxon's and/or Ocwen's loan servicing portfolio. Those duties arise under agreements with Saxon and/or Ocwen and under policies and procedures developed by Saxon and/or Ocwen. Assurant, Inc., is not a party to those agreements. Pursuant to those agreements, policies and procedures, ASIC is required, among other things, to (a) monitor the status of insurance coverage on properties where the deed of trust/security deed/mortgage indebtedness is serviced by Saxon and/or Ocwen, (b) place appropriate policies on those properties in favor of Saxon and/or Ocwen if the homeowner/borrower fails to provide evidence of acceptable insurance coverage to Saxon and/or Ocwen, or if the insurance coverage obtained by the homeowner/borrower lapses, is insufficient, is not acceptable, or becomes unacceptable, and (c) cancel the placed coverage if evidence of other acceptable insurance coverage on the property is provided by or on behalf of the homeowner/borrower. Among other things, Saxon and/or Ocwen authorizes and directs ASIC to send letters on Saxon and/or Ocwen letterhead to homeowners/borrowers under mortgages, security deeds, or deeds of trust serviced by Saxon and/or Ocwen when such

2

homeowners/borrowers do not provide evidence of acceptable insurance coverage to Saxon and/or Ocwen. In addition, ASIC tracks the insurance coverage status of properties in Saxon and/or Ocwen's portfolio(s) to properly assess the risk to the portfolio(s) in order to manage capital levels, obtain reinsurance, set claim reserves, and determine claim and other insurance processing resource needs.

6. Pursuant to the agreements with Saxon and/or Ocwen, ASIC monitored insurance coverage on the Erving Property, which secures a loan to the Ervings formerly serviced by Saxon, and currently serviced by Ocwen. I have reviewed ASIC's business records regarding the Ervings' loan, which include information such as the terms and limits of the insurance coverage for the Erving Property placed by Saxon and/or Ocwen, as well as the premiums charged for such coverage.

7. Attached hereto as Exhibit A is a true and correct copy of a letter sent to the Ervings on or about November 7, 2009.

8. Attached hereto as Exhibit B is a true and correct copy of a letter and insurance binder issued by ASIC sent to the Ervings on or about December 11, 2009.

9. Attached hereto as Exhibit C is a true and correct copy of a letter and policy issued by ASIC sent to the Ervings on or about January 9, 2010. This coverage provided flood insurance for the Erving Property with limits of liability of $221,300 for the period from November 1, 2009 to November 1, 2010 ("2009 Erving Policy"). The annual total charged for the 2009 Erving Policy was $2,039.81, consisting of an annual premium amount of $1,992.00, a CPIC assessment of $27.89, and an FHCF assessment of $19.92.

10. Attached hereto as Exhibit D is a true and correct copy of a letter sent to the Ervings on or about October 8, 2010.

11. Attached hereto as Exhibit E is a true and correct copy of a letter and policy issued by ASIC sent to the Ervings on or about November 12, 2010. This coverage provided flood insurance for the Erving Property with limits of liability of $221,300 for the period from November 1, 2010 to November 1, 2011 ("2010 Erving Policy"). The annual total charged for the 2010 Erving Policy was $2,053.75, consisting of an annual premium amount of $1,992.00, a CPIC assessment of $27.89, a FHCF assessment of $19.92, and a FIGA assessment of $13.94.

12. Attached hereto as Exhibit F is a true and correct copy of a letter sent to the Ervings on or about October 8, 2011.

13. Attached hereto as Exhibit G is a true and correct copy of a letter and policy issued by ASIC sent to the Ervings on or about November 17, 2011. This coverage provided flood insurance for the Erving Property with limits of liability of $221,300 for the period from November 1, 2011 to November 1, 2012 ("2011 Erving Policy"). The annual total charged for the 2011 Erving Policy was $2,037.82, consisting of an annual premium amount of $1,992.00, a CPIC assessment of $19.92, and an FHCF assessment of $25.90.

14. Exhibits A through G to this declaration are retained as business records of ASIC, and are maintained in the ordinary course of business.

15. The annual premiums charged for the 2009, 2010 and 2011 Erving Policies were calculated based on premium rates that were filed by ASIC with the Florida Office of Insurance Regulation ("OIR"), and approved by the OIR. *See* Voyles Declaration and Erving Policies. The rates approved by the OIR in rate filings Nos. 88-5851, 91-9308 and 96-12761 (the "Flood Filings") were applicable to the Erving Policies because they were issued from 2009-2011. *See* 2009-2011 Erving Policies; Voyles Dec. ¶¶ 6-7 and Exhibits 1-3 thereto. Attached hereto as Exhibit H is a copy of the applicable Manual Page from the Voyles Declaration that shows that

4

the premiums charged for the Erving Policies were based upon filed and approved premium rates. *See* Voyles Dec. Exhibit 3.

16. This approved rate filing provides that residential properties located in all Zones other than "V" Zones have an annual premium rate of $0.90 per $100 of coverage. Exhibit H. The Erving Property is located in zip code 33008, and is not located in a "V" Zone.

17. The 2009 Erving Policy extended $221,300 of flood coverage with respect to the Erving Property for the period November 1, 2009 to November 1, 2010. Exhibit C at 4 (Declarations page). The annual premium amount for the 2009 Erving Policy was $1,992.00. *Id.* The annual total charged for the 2009 Erving Policy included assessments required by Florida law for the Citizens Property Insurance Corporation ("CPIC"), and the Florida Hurricane Catastrophe Fund ("FHCF"). The CPIC assessment was $27.89. *Id.* The FHCF assessment was $19.92. *Id.* The annual total charged for the 2009 Erving Policy therefore was $2,039.81 ($1,992.00 + $27.89 + $19.92). *Id.*

18. The annual premium amount charged for the 2009 Erving Policy was calculated based on the rates reflected in the Flood Filings, as follows:

The premium rate applicable to the 2009 Erving Policy was $0.90 per $100 of coverage. The 2009 Erving Policy provided limits of liability in the amount of $221,300. Exhibit C at 4 (Declarations page). The annual premium amount was calculated as follows:

$0.90 x 2213 = $1,991.70, rounded off to $1,992.00, the actual premium charged.

19. The 2010 Erving Policy extended $221,300 of flood coverage with respect to the Erving Property for the period November 1, 2010 to November 1, 2011. Exhibit E at 3 (Declarations page). The annual premium amount for the 2010 Erving Policy was $1,992.00. *Id.* The annual total charged for the 2010 Erving Policy included a CPIC assessment of $27.89, a

5

FHCF assessment of $19.92, and a Florida Insurance Guaranty Association ("FIGA") assessment of $13.94 that was required at that time. *Id.* The annual total charged for the 2010 Erving Policy therefore was $2,053.75 ($1,992.00 + $27.89 + $19.92 + $13.94).

20.   The annual premium amount charged for the 2010 Erving Policy was calculated based on the rates reflected in the Flood Filings, as follows:

The premium rate applicable to the 2010 Erving Policy was $0.90 per $100 of coverage. The 2010 Erving Policy provided limits of liability in the amount of $221,300. Exhibit E at 3 (Declarations page). The annual premium amount was calculated as follows:

$0.90 x 2213 = $1,991.70, rounded off to $1,992.00, the actual premium charged.

21.   The 2011 Erving Policy extended $221,300 of flood coverage with respect to the Erving Property for the period November 1, 2011 to November 1, 2012. Exhibit G at 3 (Declarations page). The annual premium amount for the 2011 Erving Policy was $1,992.00. *Id.* The annual total charged for the 2011 Erving Policy included a CPIC assessment of $19.92 and a FHCF assessment of $25.90. *Id.* The annual total charged for the 2011 Erving Policy therefore was $2,037.82 ($1,992.00 + $19.92 + 25.90). *Id.*

22.   The annual premium amount charged for the 2011 Erving Policy was calculated based on the rates reflected in the Flood Filings, as follows:

The premium rate applicable to the 2011 Erving Policy was $0.90 per $100 of coverage. The 2011 Erving Policy provided limits of liability in the amount of $221,300. Exhibit G at 3 (Declarations page). The annual premium amount was calculated as follows:

$0.90 x 2213 = $1,991.70, rounded off to $1,992.00, the actual premium charged.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on January 10, 2014.

_____
Ronald K. Wilson

265166v2DC