UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOHN CLARIZIA, FRANCES ERVING, and
JOHNNIE ERVING, on behalf of themselves
and all others similarly situated,

        Plaintiffs,

        v.

OCWEN FINANCIAL CORPORATION,
OCWEN LOAN SERVICING, LLC, SAXON
MORTGAGE SERVICES, INC., MORGAN
STANLEY, ASSURANT, INC. (d/b/a/ Assurant
Specialty Property), and AMERICAN
SECURITY INSURANCE COMPANY,

        Defendants.

Case No. 1:13-cv-2907-ALC-HBP

---

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF SAXON MORTGAGE SERVICES, INC. AND MORGAN STANLEY'S MOTION TO SEVER

Defendants Saxon and Morgan Stanley, by and through their undersigned counsel, respectfully submit this reply memorandum in further support of their motion to sever and in response to Plaintiff's Consolidated Memorandum of Law in Opposition to Defendants' Motions to Sever, submitted February 14, 2014 ("Opp.").[1]

In order to diminish the burden on the Court, Saxon and Morgan Stanley incorporate by reference their reply submission in further support of their motion to sever in *Lyons, et al. v. Litton Loan Servicing, L.P., et al.*, 1:13-cv-513-ALC-HBP (ECF No. 124). All of the arguments made in that submission apply with equal force here. Indeed, just as in *Lyons*, Plaintiffs here falsely assert that Ocwen purchased Saxon. (Opp. at 5 ("On October 19, 2011, Ocwen acquired

---

[1] Capitalized terms used herein but not defined have the meanings ascribed to them in the Memorandum of Law in Support of Saxon Mortgage Services, Inc. and Morgan Stanley's Motion to Sever, filed January 21, 2014.

all the outstanding stock of Saxon.")). As Plaintiffs well know, that proposed transaction was never consummated. Instead, Ocwen purchased mortgage loan servicing rights from Saxon, not the company itself. *See* Ex. 2 to the Declaration of David C. Harrison, executed February 14, 2014 (ECF No. 77) (Ocwen Financial Corp. 2012 Form 10-K, at F-31) ("On April 2, 2012, we completed an acquisition from Saxon Mortgage Services, Inc. (Saxon) of a [mortgage servicing rights] portfolio . . . ."); Ocwen Financial Corp. Form 8-K, dated April 2, 2012[2] ("The purchase agreement for the Saxon Transaction was amended subsequent to the filing of the Prior 8-K so that the company acquired the Seller's servicing business and assets, including substantially all of its MSR portfolio and subservicing agreements and certain other assets, rather than its stock and employees."). For this reason alone, Plaintiffs' repeated assertions that Ocwen is properly joined because Ocwen "acquired" and is the "success-in-interest" to Saxon (e.g., Opp. at 2, 4, 5) and "assumed liability for the claims against Saxon" (Opp. at 16; see also id. at 3, 10, 17) are unfounded and should be rejected out of hand.

Unlike in *Lyons*, Plaintiffs here contend there are two ***additional*** supposedly "critical facts" that somehow require joinder of Plaintiffs' disparate claims. These "facts" are that (1) Ocwen subserviced certain loans in Saxon's portfolio during the "relevant period;" and (2) "Ocwen expressly assumed responsibility for potential losses from claims asserted against Saxon resulting from its loan servicing business." (Opp. at 2). Neither alleged "critical fact" supports joinder.

First, the purported "critical fact" that Ocwen subserviced certain loans in Saxon's portfolio is irrelevant to the Ervings' claims against Saxon because ***Ocwen did not subservice the Ervings' loan and the Complaint does not allege that it did.*** As the Ervings themselves concede, Ocwen did not replace the Ervings pre-existing lender-placed insurance policy until

---
[2] Available at http://www.sec.gov/Archives/edgar/data/873860/00010190561200451/ocn_8k.htm.

"*after*" Ocwen acquired servicing rights from Saxon in April 2012. (Opp. at 4). Thus, the Ervings' claims against Saxon and Ocwen are entirely separate, involving *different* lender-placed flood insurance programs (*i.e.*, the Saxon program versus the Ocwen program), *different* agreements, *different* witnesses, and *different* documentary evidence. Moreover, if Ocwen (or any other subservicer) *had* subserviced the Ervings' loan (which it did not), the Ervings would have no claim against Saxon at all. Their only possible claim would be against the subservicer and would depend entirely on that subservicer's actions in placing flood insurance on the Ervings' property under its separate lender-placed insurance program.

Second, the purported "critical fact" of indemnification and loss sharing provisions in the agreement between Saxon and Ocwen is irrelevant because Saxon's alleged liability to the Ervings will turn *solely* on the facts related to its own lender-placed flood insurance program -- just as Ocwen's alleged liability to the Ervings will turn *solely* on the facts related to its own lender-placed flood insurance program. Whether Ocwen (or anyone else) may later bear some or all of Saxon's theoretical liability to Plaintiffs is entirely irrelevant to any determination of whether Saxon, in fact, has any liability to Plaintiffs, or to Plaintiffs' ability "to effectuate complete relief." (Opp. at 10).

Finally, Plaintiffs fail to challenge, because they cannot, the irrefutable fact that Saxon has no relationship at all with Clarizia or his claims against Ocwen, all of which arise under Ocwen's entirely separate lender-placed flood insurance program. There is no potential overlap between Clarizia's claims against Ocwen and the Ervings' claims against Saxon, and adjudication of Clarizia's and the Ervings' claims will require examination of two entirely different sets of factual circumstances rendering joinder of the claims improper. Plaintiffs' heavy reliance on the court's decision in *Simpkins v. Wells Fargo Bank, N.A.*, No. 12-768, 2013

3

U.S. Dist. LEXIS 122760 (S.D. Ill. Aug. 28, 2013), is misplaced.  (Opp. at 9, 13).  Although the court there permitted joinder of lender-placed insurance claims, plaintiffs' claims were directed at just one servicer (i.e., Wells Fargo).  The facts in *Simpkins* plainly do not align with those here.[3]

Accordingly, the Court should sever Plaintiffs' misjoined claims into two separate actions as delineated below.

| **Case One** | | **Case Two** | |
| --- | --- | --- | --- |
| **Plaintiffs** | **Defendants** | **Plaintiffs** | **Defendants** |
| *Ervings | *Saxon Defendants<br>*Assurant Defendants | *Clarizia<br>*Ervings | *Ocwen Defendants<br>*Assurant Defendants |

---

[3] Plaintiffs' efforts to distinguish the authorities relied upon by Saxon and Morgan Stanley are equally unavailing.  (Opp. at 15-16).  The common thread running through all of the cases is that plaintiffs' claims should not be joined where key evidence related to each plaintiff will be different.  *See, e.g.*, *Kalie v. Bank of America Corp.*, No. 12-9192, 2013 WL 4044951, at *4 (S.D.N.Y. Aug. 9, 2013) (holding joinder improper because, among other things, plaintiffs entered into "different loan transactions" involving "multiple different lenders"); *Smith v. Am. Security Ins. Co.*, No. 13-6328, 2013 U.S. Dist. LEXIS 176444, at *10-11 (S.D.N.Y. Dec. 16, 2013) (holding joinder improper where "individual claims undoubtedly will require different evidence relating to the cause of and the extent of the loss"); *Peterson v. Regina*, 935 F. Supp. 2d 628, 638 (S.D.N.Y. 2013) (holding that there would be no basis for joinder where adjudicating claims would require an examination of "two entirely different sets of factual circumstances").  The reasoning in these cases fully applies here as the evidence related to Saxon's lender-placed flood insurance program and Ocwen's lender-placed flood insurance will also be completely different.

## **CONCLUSION**

For all of the foregoing reasons, Saxon respectfully requests that the Court sever the Ervings' claims against Saxon and Morgan Stanley from the other claims asserted in the Complaint and grant such other and further relief as it deems just and proper.

Dated:   March 7, 2014
         New York, New York

                                            Respectfully submitted,

                                            BINGHAM MCCUTCHEN LLP


                                            By: */s/ Mary Gail Gearns*
                                                Mary Gail Gearns
                                                marygail.gearns@bingham.com
                                                Matthew Minerva
                                                matthew.minerva@bingham.com
                                            399 Park Avenue
                                            New York, New York 10022
                                            Telephone:  212.705.7000
                                            Facsimile:  212.752.5378

                                            *Attorneys for Morgan Stanley and*
                                            *Saxon Mortgage Services, Inc.*