UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JIMMY LYONS, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>LITTON LOAN SERVICING LP, *et al.*,<br><br>    Defendants. | ECF Case<br><br>13 Civ. 00513 (ALC) (HBP) |
| JOHN CLARIZIA, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>OCWEN FINANCIAL CORPORATION, *et al.*,<br><br>    Defendants. | ECF Case<br><br>13 Civ. 02907 (ALC) (HBP) |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO SEVER**

BUCKLEYSANDLER LLP
Richard E. Gottlieb (RG0935)
Fredrick S. Levin (Admitted *Pro Hac Vice*)
100 Wilshire Boulevard, Suite 1000
Santa Monica, CA 90401
Tel: (310) 424-3900

*Attorneys for Defendants Litton Loan Servicing LP,
Ocwen Financial Corporation, and Ocwen Loan
Servicing, LLC*

March 7, 2014

## TABLE OF CONTENTS

**Page**

I. Plaintiffs Have Not Rebutted That Their Claims Arise Under Separate LPI Insurance Policies and Programs And Thus May Not Be Joined Under Rule 20. ...................................2

    A. Plaintiffs' Claims Do Not Arise From a Common and Related Scheme Because There Are No Allegations That the Servicer/Insurer Groups Acted In Concert ...............3

    B. Plaintiffs' Successor Liability Argument Provides No Support For Joinder Because The Propriety Of Litton and Saxon Insurance Placements Is Not Affected By Subsequent Servicing Transfers To OLS. ........................................................4

    C. That Plaintiffs All Have Claims Against OLS Does Not Support Joinder Of All Claims Against All Defendants Because the Claims Depend On Highly Individualized Facts. ...........................................................................................................6

II. The Discretionary Factors Weigh In Favor Of Severance Because Coordinated Discovery Can Address The Limited Overlap In Evidence And Severance Provides The Best Method To Prevent Unfair Prejudice To Defendants. ................................................ 8

CONCLUSION ........................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Am. Home Mortg. Servicing, Inc.*,
    2013 WL 2285205 (E.D.N.Y. May 23, 2013) .................................................................. 5, 6

*Bias v. Wells Fargo & Co.*,
    2012 WL 2906664 (N.D. Cal. July 13, 2012) ....................................................................... 3

*In re Mortg. Lender Force-Placed Ins. Litig.*,
    895 F. Supp. 2d 1352 (J.P.M.L. 2012) ............................................................................. 2, 7

*In re Wells Fargo Bank, N.A. Mortgage Corporation Force-Placed Hazard Insurance Litigation*,
    2013 WL 4041553 (MDL August 7, 2013) ......................................................................... 2

*Jurupa Valley Spectrum, LLC v. Nat'l Indem. Co.*,
    2007 WL 1862162 (S.D.N.Y. 2007) ................................................................................ 4, 5

*Smith v. Am. Sec. Ins. Co.*,
    2013 WL 6628358 (E.D.N.Y. Dec. 16, 2013) ................................................................. 5, 6

**Other Authorities**

Manual for Complex Litigation (Fed. Jud. Center 2004), § 10.12 ..................................................... 9

Plaintiffs have nowhere rebutted Defendants'[1] showing in their opening papers, at 9-12 ("Opening Brief"), that severance is warranted because Plaintiffs have packed their complaints with claims against three different servicers involving five *separate and distinct* Lender-Placed Insurance ("LPI") programs. As the Judicial Panel on Multi-District Litigation ("JPML") has unanimously and repeatedly held, claims arising from separate LPI programs should not be tried together because each program is the product of unique negotiations between the servicer and its insurer, different insurance policies and different program disclosures to Plaintiffs.

Plaintiffs' counsel have conceded in other cases that joinder of multiple LPI cases in a single lawsuit is manifestly inappropriate when the claims involve more than one LPI program. As Plaintiffs' counsel aptly put it, LPI cases are "lender-specific" because they involve "insurance practices that are separate and distinct from one another."[2]

Plaintiffs, in their Opposition briefs, ignore their counsel's earlier, contradictory position, the court decisions adopting it, and the existence here of the very same differences in insurers, servicers, program disclosures, and alleged abuses that the JPML and other courts found to be outcome determinative elsewhere. Instead, Plaintiffs advance a red-herring – that all plaintiffs' claims arise "from a common and related [LPI] kickback scheme" operated by OLS. *Lyons* Opp. at 6. This argument fails for two reasons:

*First*, Plaintiffs' Opposition briefs inaccurately portray the OLS LPI program as the only one genuinely at issue, but Plaintiffs ignore their *actual* allegations, which seek relief as to several *types* and various *programs* of insurance placed by servicers that – at the time the insurance was placed – were wholly independent of (and in direct competition with) each other.

---

[1] "Defendants" refers collectively to defendants Ocwen Financial Corporation ("OFC"), Ocwen Loan Servicing, LLC ("OLS"), and Litton Loan Servicing, LLC ("Litton").

[2] Memorandum in Opposition to Amended Motion to Transfer For Coordinated or Consolidated Pre-Trial Proceedings, MDL No. 2388, Dkt. No. 173 (2012), p. 6.

1

*Second*, misjoinder of claims involving multiple LPI programs produces neither efficiency nor fair play, but instead will lead to confusion, delay, and unfair prejudice. Accordingly, severance is necessary to promote judicial economy and avoid unfair prejudice.

## I. Plaintiffs Have Not Rebutted That Their Claims Arise Under Separate LPI Insurance Policies and Programs And Thus May Not Be Joined Under Rule 20.

LPI cases challenging distinct insurance programs do not belong together in the same lawsuit. The JPML has so held repeatedly. *In re Mortg. Lender Force-Placed Ins. Litig.*, 895 F. Supp. 2d 1352, 1353-54 (J.P.M.L. 2012) ("2012 MDL Order") (LPI actions "involve . . . different defendants [with] different lender agreements with insurers, different alleged abuses, and different mortgage loan documents.") *See also In re Wells Fargo Bank, N.A. Mortgage Corporation Force-Placed Hazard Insurance Litigation*, 2013 WL 4041553, at *2 (MDL August 7, 2013) ("2013 MDL Order") (reaffirming 2012 MDL Order).

In their Oppositions, Plaintiffs raise three arguments to justify a different result in this case. First, they argue that Plaintiffs' claims arise from a "common and related" scheme operated by OLS. *Lyons* Opp. at 6. Second, they argue that joinder of all claims by all Plaintiffs in one proceeding is proper because OLS and OFC are successors to Litton and Saxon. *Id.*; *Clarizia* Opp. at 7-9.[3] Finally, Plaintiffs argue that joinder of all claims against all parties is proper because seven of the nine Plaintiffs have direct claims against OLS. *Id.* None of these arguments have merit.[4]

---

[3] Plaintiffs misleadingly assert in the *Clarizia* Opp. that "[t]he parties and their counsel" cooperated to segregate claims into *Lyons* and *Clarizia*, based on LPI product (hazard or flood). Opp. at 5. To the contrary, Defendants' counsel refused to agree to Plaintiffs' plan to amend their complaints and reserved all of their rights.

[4] Further, Plaintiffs ignore Defendants' arguments that (i) Plaintiff Papapietro's claims are duplicative of a pending lawsuit filed by him in the Eastern District of New York approximately three months *before* this Southern District case. His claims should therefore be dismissed (Opening Brief at 9-10).

A.   **Plaintiffs' Claims Do Not Arise From a Common and Related Scheme Because There Are No Allegations That the Servicer/Insurer Groups Acted In Concert.**

Plaintiffs' assertion of a "common and related" scheme is convenient for purposes of opposing severance, but is not supported by the SACs' allegations. The *Lyons* SAC complains of three separate, distinct LPI programs, each of which Plaintiffs allege to be its own independent "enterprise."[5] Similarly, the *Clarizia* SAC complains of flood LPI programs operated by Saxon and OLS, and alleges each to be an independent "enterprise." *Clarizia* SAC ¶¶ 121-22, 156.

Plaintiffs have not alleged that these distinct insurance programs[6] operated in concert. Rather, Plaintiffs have "limited their claims to the loan servicer that serviced their mortgage *at the time* of the forced placement and to *that* loan servicer's exclusive force-placed hazard insurance provider *at the time* … ." See *Lyons* Opp. at 7 (emphasis added). Accordingly, joinder cannot be justified on the basis of a supposed "common and related" scheme connecting the three servicers and their respective insurers.

*Bias v. Wells Fargo & Co.*, 2012 WL 2906664 (N.D. Cal. July 13, 2012), is directly on point. In *Bias*, plaintiffs attempted to join claims against three lenders, making allegations as to three plaintiff sub-classes related to the three lender groups, and alleging three RICO enterprises. The *Bias* court held that severance was proper because Plaintiffs had not alleged any "conspiracy, concerted action, or RICO enterprise *as between the Defendants groups*, only three separate RICO enterprises within those groups." *Id.* at *2-3 (emphasis added). Applying the

---

[5] See *Lyons* SAC ¶¶ 230, 247-253 (describing the "Litton Force Placed Insurance Enterprise," the "Saxon Force-Placed Insurance Enterprise," and the "Ocwen Force Placed Insurance Enterprise").

[6] The insurance policies issued to Plaintiffs by these different insurers are not the same. *Compare Lyons* SAC Ex. 30 (American Modern Home Insurance Company), Ex. 34 (Standard Guaranty Insurance Company), Ex. 39 (American Security Insurance Company). And the disclosures made to borrowers about their insurance were different. *See* Opening Brief at pp. 9-12 (describing differences in disclosures).

3

same analysis here, Plaintiffs in *Lyons* have lumped together claims relating to three distinct LPI hazard insurance programs; Plaintiffs in *Clarizia* lump together two distinct LPI flood insurance programs. Neither the *Lyons* nor *Clarizia* complaints contain allegations of conspiracy, concert of action, or RICO action *connecting* any of the alleged groups.[7] Here, as in *Bias*, severance is warranted because Plaintiffs have not (and cannot) plead that the insurance placements made pursuant to any of these discrete programs were "transactionally related" under Rule 20.

### B. Plaintiffs' Successor Liability Argument Provides No Support For Joinder Because The Propriety Of Litton and Saxon Insurance Placements Is Not Affected By Subsequent Servicing Transfers To OLS.

Plaintiffs incorrectly rely on a successor liability theory to assert that OLS and OFC are responsible for the alleged wrongdoing of Litton and Saxon. *See Lyons* Opp. at 6-7; *Clarizia* Opp. at 5-6. Plaintiffs then argue that OLS's and OFC's alleged successorship status provides the thread linking all Plaintiffs' claims. *Lyons* Opp. at 6-7. These arguments fail for several reasons.

*First*, neither OLS nor OFC is a successor-in-interest to Litton or Saxon.[8] As Plaintiffs' own Complaint effectively admits, Litton is not a predecessor corporation to OFC. Even Plaintiffs agree that OFC did not purchase Litton until September 1, 2011 (*Lyons* SAC ¶ 75), nor did OLS or OFC assume Litton's pre-acquisition liabilities. *Id.* (reciting that OFC agreed to "certain indemnification provisions"). *See Jurupa Valley Spectrum, LLC v. Nat'l Indem. Co.*, 2007 WL 1862162, at *6 (S.D.N.Y. June 29, 2007) (distinguishing indemnification from assumption agreements). Contrary to Plaintiffs' conclusory allegations (*Lyons* SAC ¶ 78), the

---

[7] Plaintiffs improperly rely on *Simpkins v. Wells Fargo Bank, N.A.*, 2013 WL 4559711 (S.D. Ill. Aug. 28, 2013), to argue that individual differences in programs should be ignored when there is a central question regarding the inappropriateness of the LPI program(s) at issue. *Clarizia* Opp. at 9. However, as pointed out in the Motion to Sever, *Simpkins* involved just one servicer/lender LPI program – Wells Fargo's. Opening Brief at 23 n. 11.

[8] At the October 16, 2013 status conference, the Court stayed briefing on Defendants' motions to dismiss until after resolution of all motions to sever. At the appropriate time, OLS and OFC will move to dismiss Plaintiffs' successor liability claims.

4

loss sharing provision in the Saxon purchase agreement is a contract of indemnity, not an assumption of liability.[9] *Jurupa Valley Spectrum, LLC,* 2007 WL 1862162, at *6.

*Second*, even if OLS and OFC were deemed Litton's and Saxon's successors (they are not),[10] that alone would not establish the necessary transactional relatedness to justify joinder of the Litton and Saxon claims. "[T]he mere presence of a common defendant . . . does not satisfy the same transaction or occurrence requirement." *Smith v. Am. Sec. Ins. Co.*, 2013 WL 6628358, at *4 (E.D.N.Y. Dec. 16, 2013). In *Smith*, six Plaintiffs sued American Security Insurance, Inc. ("ASIC") – one of the defendants here – alleging that it had improperly denied insurance claims arising from Superstorm Sandy. Although each Plaintiff had purchased insurance separately, received separate policies, and suffered damages to his own property, the plaintiffs argued that joinder was proper because each claim arose from the same storm and each plaintiff was suing the same insurer. The Eastern District of New York had no trouble finding joinder improper:

> [T]he only material commonalities between Plaintiffs' claims are that Plaintiffs' properties suffered damages caused by the same storm and that Plaintiffs present similar legal theories against a common defendant.

*Id.*; *see also Abraham v. Am. Home Mortg. Servicing, Inc.*, 2013 WL 2285205, at *4 (E.D.N.Y. May 23, 2013) (holding that plaintiffs' "separate mortgage transactions d[id] not constitute a

---

[9] Plaintiffs' citation (*Clarizia* Opp. at 5) to the OFC/Saxon stock purchase agreement ("SPA") is misleading. As OFC informed Plaintiffs' counsel in a pre-motion letter filed in the original *Erving* action over a year ago, prior to consummation, the SPA was extinguished by an Amended and Restated Purchase Agreement dated March 18, 2012. *See Lyons* SAC ¶ 78. The Amendment changed the Saxon transaction from a stock purchase by OFC to an asset sale to OLS. By mischaracterizing the transaction in its Opposition, Plaintiffs imply assumptions of liability that did not take place.

[10] Plaintiffs assert that Defendants' argument regarding OLS's successor liability "is an argument as to the merits . . . inappropriate at this stage." *Clarizia* Opp. at 10. To the contrary, to the extent there is a question regarding OLS's assumption of Saxon's liability, that question should be determined in a Saxon-specific case, not a case involving any other LPI programs (including OLS's), where the issue is not germane and risks being conflated with other issues, including a similar-seeming but distinct transaction between OLS and Litton.

5

single transaction or occurrence" and stating that "even claims by plaintiffs who engaged in separate loan transactions by the *same lender* cannot be joined in a single action"). Here, as in *Smith* and *Abraham*, the insurance placements made by Litton, Saxon and OLS are separate "transactions and occurrences." They are not logically related under Rule 20.

For example, the Lyonses complain that *Litton* placed insurance on their Florida property in 2010. *Lyons* SAC ¶ 139. In the same complaint, co-plaintiff Lisa Engelhardt complains that *OLS* placed insurance on her Virginia property in 2012. *Id.* ¶ 144. The Lyons and Engelhardt insurance placements were separate transactions, occurring at separate times, under *different* facts, involving *different* borrowers, *different* servicers, *different* insurers, and *different* insurance policies. They have no transactional relationship with each other.

The JPML has repeatedly said that such disparate claims should not be litigated in one case. Plaintiffs have themselves conceded the point before the JPML. The OLS, Litton, and Saxon insurance placements occurred in distinct transactions, and Plaintiffs' successor liability argument does nothing to alter this conclusion.[11]

C. **That Plaintiffs All Have Claims Against OLS Does Not Support Joinder Of All Claims Against All Defendants Because the Claims Depend On Highly Individualized Facts.**

Plaintiffs' Oppositions misleadingly assert that "[a]ll plaintiffs, except the Lyons, were force-placed directly by *Ocwen* and assert claims challenging those loan servicing abuses."

---

[11] Plaintiffs' reliance on the two unpublished cases cited in footnote 5 of the *Lyons* Opp. is misplaced. Those cases stand for the unremarkable proposition that a legal successor can be named in a lawsuit challenging the predecessor's conduct. OLS does not dispute that proposition here because it is not apt. The issue here is whether the Lyonses' claims and those of Plaintiffs like Engelhardt should be litigated in one lawsuit, not whether OFC – if it is really Litton's successor (it is not) – could be joined properly in a case involving *only* the Lyonses' claims.

6

*Lyons* Opp. at 4 (emphasis added).[12] This argument does not support joinder of all claims against all Defendants, not the least of which is the misleading use of the term "Ocwen."

*First*, OFC did not own Litton, and OLS had not yet entered into the servicing rights acquisition agreement with Saxon, when Plaintiffs were first placed into Litton's and Saxon's very separate LPI programs. At the time, each LPI program was distinct.

*Second*, Plaintiffs' claims against OLS do not all belong in one lawsuit because they are highly individualized. The JPML has considered the scenario repeatedly and, each time, rejected the proposition that all LPI claims arising under even a single LPI insurance program should be joined in one case. In 2012, the JPML was first asked to consider whether all LPI cases nationwide should be consolidated for pre-trial purposes in the Southern District of Florida. Plaintiffs' counsel in this action vigorously opposed such "industry-wide" consolidation, principally to protect their own cases from being swept away by competing class action attorneys who controlled the Florida litigation. In rejecting industry-wide consolidation, the JPML also considered the question of whether pre-trial consolidation of all cases against even a *single* lender involving only a *single* LPI product should be permitted. The six-judge Panel said "no" unanimously and wrote: "In light of these significant factual differences [in how coverage amounts were set, in payment of commissions, and other rights borrower and lender] the Panel has determined that centralization of the actions on a bank-specific basis also is not warranted." 2012 MDL Order, 895 F. Supp. 2d at 1353 n. 2.

Plaintiffs' counsel tested the same issue again less than a year later. In four separate cases, involving Wells Fargo, HSBC, JP Morgan Chase, and Bank of America, the Panel

---

[12] The Lyonses, Heard, and Papapietro were initially placed by Litton; the Ervings were initially placed by Saxon; and Dominguez, Engelhardt, Clarizia, and Coulthurst were initially placed by OLS.

7

confirmed its earlier determination rejecting centralization even of cases involving only a single lender and a single insurance product:

> [T]he pending actions involve different originating lenders, mortgage agreements with materially different terms concerning force placed insurance, and differing disclosures to borrowers at the time the force-placed insurance policies were placed. Thus, individualized discovery and legal issues will be substantial.

2013 Order, 2013 WL 4041553 at *2. The same conclusion applies here. *See* Opening Brief at pp. 7-14 (detailing each Plaintiff's highly individualized grievances as pled in the SACs).

*Third*, Plaintiffs' new argument that OLS served as subservicer to a portion of Saxon's loans (*Clarizia* Opp. at 2) is yet another red-herring that has no bearing on joinder. For one, nowhere do Plaintiffs allege that OLS subserviced their loans. In fact, the Ervings (who raise claims against both Saxon and OLS) specifically state that OLS placed an LPI policy after it "acquir[ed]" Saxon. *Id.* at 4. Further, if OLS (or any Defendant) was a subservicer of a Plaintiff's loan for purposes of LPI placement, all communications and disclosures would come from the subservicer itself; from the borrower's perspective, their interactions would be with that subservicer. Thus, a subservicer agreement is wholly irrelevant to the joinder analysis at issue here.

Accordingly, that OLS placed LPI on each Plaintiff's property is insufficient to support joinder of all Plaintiffs' claims against OLS or OFC (much less to support the multi-headed hyrda that Plaintiffs and their counsel have created).

## II. **The Discretionary Factors Weigh In Favor Of Severance Because Coordinated Discovery Can Address The Limited Overlap In Evidence And Severance Provides The Best Method To Prevent Unfair Prejudice To Defendants.**

Defendants demonstrated in their opening brief that all three discretionary factors applicable to motions to sever favor severance here: judicial economy will be promoted by granting Defendants' motions to sever, Plaintiffs' claims involve very little overlapping proof

8

and evidence, and severance reduces the risk of unfair prejudice to Defendants. *See* Opening Brief at pp. 22-23. In their Oppositions, Plaintiffs argue that severance would require each step of the litigation to be conducted in triplicate, leading to inefficiency. *Lyons* Opp. at 12-13. As the JPML has found repeatedly in LPI litigation, joinder is not "necessary for the convenience of the parties and witnesses or for the just and efficient conduct of this litigation." 2013 Order, 2013 WL 4041553 at *2. Similarly, here, the potential witnesses, evidence, and legal arguments are distinct for each of the LPI programs, because each was established at different times between different companies (and logically involved different individuals). Further, Plaintiffs' actual grievances are highly individualized, meaning that there will be little overlap in the testimony.

Even after severance, any potential inefficiency can be avoided through informal coordination. *See* Manual for Complex Litigation (Fed. Jud. Center 2004), § 10.12 ("[C]ourts can still use informal means to coordinate proceedings to the extent practicable. Coordination methods include arrangements made by counsel, communications between judges, joint pretrial conferences . . . and parallel orders."). Accordingly, the efficiency factor favors severance.

Moreover, the key discretionary factor – avoidance of unfair prejudice – favors severance. Plaintiffs assert that the risk of unfair prejudice is speculative and can be controlled by court orders and jury instructions. *Lyons* Opp. at 15-16. To the contrary, Plaintiffs' operative complaints demonstrate that severance is necessary to avoid unfair prejudice. In their pleadings, Plaintiffs create a fictional composite loan servicer, a fictional composite LPI program, and a composite insurer, and then impute the worst aspects of the composites to all defendants indiscriminately. For example, the SACs devote page after page to describing an LPI scheme involving "illicit kickbacks." *Lyons* SAC ¶¶ 44-129. But the allegations are not tied specifically to any one of Litton, Saxon, or OLS. Rather, they are based on conduct of "servicers" generally

9

using information provided by so-called "industry insiders." *See, e.g., Lyons* SAC ¶¶ 95, 97, 99, 101, 105, 108, 114, 115, 117-122, 124-125. The SACs then impute the supposed conduct of the fictional composite servicer to Litton, Saxon, and OLS under a composite name, "the Loan Servicing Defendants." *Lyons* SAC ¶ 1. By this device, Plaintiffs avoid actually pleading facts stating what any particular defendant did or explaining specifically how OLS, Litton, or Saxon received "illicit kickbacks." Contrary to Plaintiffs' argument, the risk of unfair prejudice absent severance is not speculative; it is a certainty based on how Plaintiffs' have litigated these cases.

## CONCLUSION

Plaintiffs have responded to Defendants' Motion to Sever by miscasting their claims and providing only cursory responses to (or simply ignoring) many of Defendants' contentions. Plaintiffs present no claims that are transactionally related or that contain any common issues of law or fact. The additional discretionary factors also favor severance. Therefore, this Court should sever the SACs based on the Plaintiffs' respective loan servicer and insurer.[13]

Dated: March 7, 2014

Respectfully submitted,

**LITTON LOAN SERVICING LP, OCWEN FINANCIAL CORPORATION AND OCWEN LOAN SERVICING LLC**

By: /s/ Fredrick S. Levin
Richard E. Gottlieb (RG0935)
Fredrick S. Levin (Admitted *Pro Hac Vice*)
**BUCKLEYSANDLER LLP**
100 Wilshire Boulevard, Suite 1000
Santa Monica, CA 90401
Phone: (310) 424-3900
Fax: (310) 424-3960

---

[13] OLS and OFC reserve the right to seek severance of individual OLS or OFC cases at the appropriate time.

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 7, 2014, I electronically filed the foregoing with the Clerk of the United States District Court for the Southern District of New York through the CM/ECF system, thereby automatically serving all registered parties.

/s/ Fredrick S. Levin
Fredrick S. Levin