IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN CLARIZIA, FRANCES ERVING, and JOHNNIE ERVING, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>-v-<br><br>OCWEN FINANCIAL CORPORATION, OCWEN LOAN SERVICING, LLC, SAXON MORTGAGE SERVICES, INC., MORGAN STANLEY, ASSURANT, INC. (d/b/a/ Assurant Specialty Property), and AMERICAN SECURITY INSURANCE COMPANY,<br><br>Defendants. | Civil Action No. 13 Civ. 02907 (ALC) |

**PLAINTIFFS' RESPONSE TO ASSURANT INC. AND AMERICAN SECURITY INSURANCE COMPANY'S FIRST NOTICE OF SUPPLEMENTAL AUTHORITY**

Defendants Assurant, Inc. and American Security Insurance Company (together "Assurant" or "Assurant Defendants") cite the recent decision in *In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, No 13-md-24510 (ADS), 2014 U.S. Dist. LEXIS 29050 (E.D.N.Y. Mar. 5, 2014), in arguing for dismissal, under Article III standing grounds, of Plaintiffs' claims for unjust enrichment and aiding and abetting breach of fiduciary duty on behalf of any putative class members residing outside of Florida and Massachusetts, where the respective named Plaintiffs reside and sustained injury.[1] *See* Defendants Assurant Inc. and American Security Insurance Company's First Notice of Supplemental Authority, Dkt. No. 86. Assurant Defendants' reliance on *In Re HSBC Bank* in support of this proposition is misplaced.

---

[1] *See* Second Amended Complaint, Dkt. No. 60, ¶¶ 33-34 [p.13]; ¶¶ 81-91 [pp. 28-29]; and ¶¶ 75-93 [pp. 30-33].

Assurant Defendants argue that standing should be resolved prior to class certification because "[t]o hold otherwise would allow Plaintiff to engage in lengthy and expensive discovery with respect to alleged violations of state laws when the Court cannot be certain that any individual [plaintiff] suffered any injury under those laws." *In re HSBC Bank*, 2014 U.S. Dist. LEXIS, at *33 (emphasis added, citing cases); *accord*, *Lauren v. PNC Bank, N.A.*, 296 F.R.D. 389, 391 (W.D. Pa. 2014). However, the discovery considerations that prompted early determination of the standing issues in *In re HSBC Bank* and *PNC Bank* are not present here because Plaintiffs in the instant case also assert RICO claims on behalf of a nationwide class. Accordingly, narrowing the state law claims to just two states will not alleviate the need for nationwide discovery concerning Defendants' practices because such discovery will be relevant and necessary for Plaintiffs' RICO claims.[2] Moreover, class certification is necessarily antecedent to a determination of Plaintiffs' standing to assert claims on behalf of borrowers outside of Florida or Massachusetts because until Plaintiffs move for class certification the only relevant standing is Plaintiffs' Article III standing to assert individual claims. "Class standing" is determined at the time of class certification in conjunction with the Rule 23 analysis. *See, e.g., NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012).

Plaintiffs further note that *In re HSBC Bank* and *PNC Bank* are outliers and are not binding on this Court. The Court properly should follow the well-reasoned class standing principles articulated by the Second Circuit in *Goldman Sachs* and *Merck-Medco Managed Care,* discussed herein.

Assurant Defendants claim that *In re HSBC Bank* "echo[s] the analysis of the Second

---

[2] At present, Plaintiffs intend to move for certification of a nationwide class for federal RICO claims only. However, Plaintiffs reserve all rights to move for nationwide certification of their state law claims, or for certification of a certain subset of state classes, and will define and appropriately support the proposed classes when moving for class certification.

Circuit in *Mahon v. Ticor Title Ins. Co.,* 683 F.3d 59, 64 (2d Cir. 2012)," which Assurant cites as "controlling authority" on the question of standing. *See* Reply in Support of Assurant's Motion to Dismiss ("Reply"), Dkt. No. 80, at 8. While *Mahon* clarified that Supreme Court jurisprudence had not established a "general directive regarding the order in which a court should treat class certification and Article III standing in every class action,"[3] 683 F.3d at 65, decisions within this Circuit post-*Mahon* continue to recognize "a growing consensus among district courts that class certification is logically antecedent, where its outcome will affect the Article III standing determination, and the weight of authority holds that in general class certification should come first." *Kassman v. KPMG LLP,* 925 F. Supp. 2d 453, 469 (S.D.N.Y. 2013) (quoting *In re DDAVP Indirect Purchaser Antitrust Litig.,* 903 F. Supp. 2d 198 (S.D.N.Y. 2012)).

Further, *Mahon* is inapposite. In *Mahon*, the plaintiff sought to assert claims not only against the title company involved in her home refinancing, but also against other title companies with whom she had no dealings. The Second Circuit characterized this theory as "unprecedented" and flawed in "fail[ing] to explain why a plaintiff's injury resulting from the conduct of one defendant should have any bearing on her Article III standing to sue other defendants, even if they engaged in similar conduct that injured other parties." *Mahon,* 683 F.3d at 65. The Court observed that "[n]o decision that we can discern has ever adopted such a broad interpretation of constitutional standing" and "decline[d] to adopt Mahon's novel and unsupported interpretation of Article III." *Id.* at 62-63, 66.

Plaintiffs' claims here are starkly different. Plaintiffs were directly harmed by all of the Defendants in this case, and at the appropriate time, Plaintiffs will move for certification of their

---

[3] In *Ortiz v. Fibreboard Corp.,* 527 U.S. 815 (1999), the Court stated that "**class certification issues are... logically antecedent to Article III concerns**... and themselves pertain to statutory standing, which may be treated before Article III standing." *Id.* at 831 (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 6112 (1997)) (emphasis added).

nationwide RICO claims as well as certification of similarly situated classes of borrowers asserting state law claims. Unlike the plaintiffs in *Mahon*, Plaintiffs here satisfy the long-standing test that "for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant, and at that point standing is satisfied and only then will the inquiry shift to a class action analysis." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007) (quotations omitted).

The Second Circuit reaffirmed this proposition in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, where, in an analogous setting, it discussed the interplay between Article III and class certification. In *Goldman Sachs*, the plaintiff purchased securities in only two of 17 mortgage-backed securities (MBS) offerings which were issued under a common shelf registration statement but later sold under 17 separate prospectus supplements. The lower court held, *inter alia*, that the plaintiff only had standing to assert claims for the two offerings that plaintiff had purchased and gave rise to damages, even if the prospectuses for the other offerings contained substantially similar misrepresentations. *Id.* at 154. The Second Circuit reversed.

In that action, it was undisputed that the named plaintiff sustained injury under Article III as to the two offerings it had purchased. *See id.* at 158. In addressing whether the plaintiff had "'class standing' ... to assert claims *on behalf of* purchasers ... of other offerings," the Second Circuit explained that the inquiry did not require plaintiff to have Article III standing to seek to recover as to the 15 offerings it had not purchased. *Id.* On the contrary:

> [W]hether NECA has "class standing"—that is, standing to assert claims *on behalf of* purchasers of Certificates from other Offerings, or from different tranches of the same Offering—does not turn on whether NECA [itself] would have statutory or Article III standing to seek recovery for misleading

> statements in those Certificates' Offering Documents. NECA clearly lacks standing to assert such claims on its behalf because it did not purchase those Certificates. Because the class standing analysis is different, the district court erred in concluding, based on the fact that NECA purchased just two 'particular ... [C]ertificate[s] ... that it necessarily lacked standing to assert claims *on behalf of* purchasers of Certificates from other Trusts .

*Id.* at 158 (emphasis added; italics in original).

The Second Circuit in *Goldman Sachs* based its analysis on a series of Supreme Court decisions that collectively stand for the proposition that a named plaintiff has "class standing" if he plausibly alleges "(1) that he personally has suffered some actual ... injury as a result of the putatively illegal conduct of the defendant, ... and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the *same defendants*." *Id.* at 162 (citing *Blum v. Yaresky*, 457 U.S. 991, 999 (1982), and *Gratz v. Bollinger*, 539 U.S. 244, 267 (2003)) (emphasis added, internal quotations omitted). The Court explained in the context of MBS purchases, that the "same set of concerns," are shared, and class standing exists, where the mortgages backing the MBS were "originated by the same lenders that originated the mortgages backing plaintiff's certificates." *Id.* at 148-49. In that instance, the common proof for all offerings would center on whether the particular lender had in fact abandoned its underwriting guidelines, rendering all of the offering documents misleading.[4] *Id.* at 163.

Here, as in *Goldman Sachs*, Plaintiffs have adequately pleaded class standing on behalf of a nationwide class. Plaintiffs and other borrowers share the same set of concerns with respect to the force-placed insurance practices employed by Assurant Defendants and the lender Defendants resulting in similar injuries nationwide. Common proof would include evidence of a common scheme to charge improper kickbacks in the form of unearned commissions and

---

[4] The Court observed that the fact that damages may need to be determined on an individual basis "is not sufficient to defeat class certification let alone class standing." *Id.* (quotations and citations omitted).

reduced-cost tracking fees, and to improperly backdate force-placed insurance. Assurant Defendants' participation in and illicit profiting from this scheme also was common to all putative class members. Any individual questions regarding application of state law claims for unjust enrichment and aiding and abetting are best resolved at class certification in the context of defining the scope of any nationwide or state-wide classes.[5]

Dated: May 7, 2014

        **LOWEY DANNENBERG COHEN & HART, P.C.**

By:    /s/ David Harrison
       Barbara J. Hart (BH-3231)
       David Harrison (DH-3834)
       One North Broadway, Suite 509
       White Plains, NY 10601-2301
       Telephone: (914) 997-0500
       Facsimile: (914) 997-0035
       Email: bhart@lowey.com
            dharrison@lowey.com

**KESSLER TOPAZ
MELTZER & CHECK, LLP**
Edward W. Ciolko
Peter A. Muhic
Tyler S. Graden
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
Email: eciolko@ktmc.com

---

[5] Furthermore, the Supreme Court's recent opinion in *Lexmark Intn'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014) confirms that Assurant Defendants are conflating Article III standing – which is plainly satisfied here – with prudential, or "statutory," standing that looks to whether an individual plaintiff has a "cause of action" arising under a particular law. As the Supreme Court explained in *Lexmark*, in order to satisfy Article III standing, "[t]he plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Id.* at 1386. The Supreme Court in *Lexmark* further found that the issue of whether plaintiffs had "prudential" or "statutory" standing to assert a particular "cause of action" was a separate analysis not properly examined under Article III. *Id.* at 1388. Thus, as *Lexmark* makes clear, Plaintiffs in the instant matter plainly satisfy Article III's standing requirements, and the issue of whether Plaintiffs appropriately bring a cause of action on behalf of putative class members in other states or on a nationwide basis is a separate determination more appropriately resolved under Rule 23.

pmuhic@ktmc.com
tgraden@ktmc.com

**TREUHAFT & ZAKARIN**
Norah Hart
305 Broadway, 9th Floor
New York, New York 10007
Telephone: (212) 725-6418
Facsimile: (646) 924-0554
Email: nhart@treulaw.com

**BERGER & MONTAGUE, P.C.**
Shanon J. Carson
Patrick Madden
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-4656
Facsimile: (215) 875-4604
Email: scarson@bm.net
         pmadden@bm.net

**TAUS, CEBULASH & LANDAU, LLP**
Brett Cebulash
Kevin S. Landau
80 Maiden Lane, Suite 1204
New York, NY 10038
Telephone: (212) 931-0704
Facsimile: (212) 931-0703
Email: bcebulash@tcllaw.com
         klandau@tcllaw.com

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
Robert K. Shelquist
100 Washington Avenue South,
Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Email: rkshelquist@locklaw.com

**NIX PATTERSON & ROACH, LLP**
Jeffery J. Angelovich
Michael B. Angelovich
Brad Seidel

Christopher R. Johnson
205 Linda Drive
Daingerfield, TX 75638
Telephone: (903) 645-7333
Facsimile: (903) 645-4415

**DEALY SILBERSTEIN
& BRAVERMAN, LLP**
Milo Silberstein
225 Broadway, Suite 1405
New York, NY 10007
Telephone: (212) 385-0066
Facsimile: (212) 385-2117
msilberstein@dsblawny.com

**CUNEO GILBERT & LaDUCA,
LLP**
Charles J. LaDuca
8120 Woodmont Avenue
Bethesda, MD 20814
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
Email: charlesl@cuneolaw.com

*Attorneys for Plaintiffs*