UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN CLARIZIA, *et al.*, individually and on behalf of all others similarly situated,

        Plaintiffs,

        v.

OCWEN FINANCIAL CORP., *et al.*,

        Defendants.

Case No. 1:13-cv-2907-ALC-HBP

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY
<u>DEFENDANTS SAXON MORTGAGE SERVICES, INC. AND MORGAN STANLEY</u>**

MORGAN, LEWIS & BOCKIUS LLP
399 Park Avenue
New York, New York  10022
Tel:  (212) 705-7000
Fax:  (212) 752-5378

*Attorneys for Defendants Saxon Mortgage Services, Inc. and Morgan Stanley*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................... 1

ADDITIONAL FLOOD INSURANCE FACTS ........................................................................... 2

ARGUMENT .................................................................................................................................. 4

      THE ERVINGS' FLOOD INSURANCE CLAIMS  FAIL TO STATE A CLAIM AND SHOULD BE DISMISSED ......................................................................................... 4

            A.      The Ervings' Allegation of Excessive  Flood Insurance Coverage Is Futile ................................................................................................................ 5

            B.      The Ervings' Allegation of Flood Insurance "Backdating" Is Futile ........ 7

CONCLUSION ............................................................................................................................... 8

# TABLE OF AUTHORITIES

### CASES

Page(s)

Cannon v. Wells Fargo Bank, N.A.,
   2013 WL 3388222 (N.D. Cal. July 5, 2013)............................................................................7

DiFolco v. MSNBC Cable LLC,
   622 F.3d 104 (2d Cir. 2010)....................................................................................................2

Feaz v. Wells Fargo Bank, N.A.,
   745 F.3d 1098 (11th Cir. 2014) ...............................................................................................6

Kolbe v. BAC Home Loans Servicing, LP,
   738 F.3d 432 (1st Cir. 2013).....................................................................................................6

Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.,
   868 F. Supp. 2d 172 (S.D.N.Y. 2012)......................................................................................2

Swain v. Wells Fargo Bank, N.A.,
   --- F. Supp. 3d ----, 2014 WL 4675363 (N.D. Ohio Sept. 18, 2014) ........................................6

### STATUTES

42 U.S.C. § 4012a(b)(1)..................................................................................................................6

42 U.S.C. § 4012a(e)(2).................................................................................................................7

Defendants Saxon Mortgage Services, Inc. ("Saxon") and Morgan Stanley submit this Memorandum of Law in support of their motion for an order, pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, dismissing the Second Amended Complaint (the "SAC") (ECF No. 60) as against them, with prejudice.

## PRELIMINARY STATEMENT

This is the second of two related actions brought by Johnnie and Frances Erving challenging the manner in which Saxon, the former servicer of their mortgage loan, placed insurance on their property after the Ervings failed to do so in violation of the express terms of their mortgage.[1]  The first action (Lyons, *et al.* v. Litton Loan Servicing LP, *et al.*, Case No. 1:13-cv-513 (S.D.N.Y.) ("Lyons")) concerns the hazard insurance placed on the Ervings' property, whereas the present action concerns their flood insurance.  Because the substantive allegations and theories of liability in both actions are essentially the same, Saxon and Morgan Stanley incorporate by reference the memorandum of law they submitted in support of their motion to dismiss the Lyons complaint.  For the Court's convenience, a copy of that memorandum is attached hereto as Exhibit A (the "Lyons Brief") (Lyons ECF No. 162).[2]

The claims asserted by the Ervings in this action are a subset of the claims asserted in Lyons, and they fail for the same reasons explained in the Lyons Brief.  The purpose of this memorandum is to place before the Court the additional facts and law relevant to the Ervings' flood insurance claims, all of which further support the dismissal of their claims.

---

[1] The Ervings are the only named plaintiffs with claims against Saxon and Morgan Stanley.  Saxon is not alleged to have serviced plaintiff John Clarizia's mortgage loan.

[2] Any capitalized terms used here but not defined have the meanings ascribed to them in the Lyons Brief.

## ADDITIONAL FLOOD INSURANCE FACTS[3]

As explained in the Lyons Brief, the Ervings are residents of Florida and owners of the property located at 216 SW 10th Street in Hallandale. SAC ¶ 90 & Ex. 3. In July 2006, they obtained a loan from NovaStar Mortgage, Inc. secured by a mortgage (the "Mortgage") on their property (the "Property"). SAC ¶ 91 & Ex. 4.

Under the terms of their Mortgage, the Ervings were required, among other things, to "keep the improvements . . . on the Property insured against loss by fire . . . and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance." SAC Ex. 4 at ¶ 5. The Ervings also agreed that if they failed to maintain the required coverages on their Property, their lender could "obtain insurance coverage, at Lender's option and Borrower's expense," and that the insurance obtained by their lender "*might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.*" Id. (emphasis added). Because the Property was located in a "Special Flood Hazard Area" (as designated by FEMA under the National Flood Insurance Act), the Ervings were "required to purchase and maintain flood insurance." SAC ¶ 5.

The Ervings entered into a Home Affordable Modification Agreement (the "Modification Agreement"), which was effective as of August 1, 2010. Declaration of Mary Gail Gearns ("Gearns Decl."), Ex. 3. In the Modification Agreement, the Ervings agreed to "comply . . . with

---

[3]   The facts are gleaned from the well-pled allegations in the SAC (which are assumed to be true for purposes of this motion only), the exhibits thereto, and documents that are either incorporated by reference or otherwise integral to the SAC. DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 111 (2d Cir. 2010); Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc., 868 F. Supp. 2d 172, 176 (S.D.N.Y. 2012).

all covenants, agreements, and requirements of [the Mortgage and Note] including [their] agreement to make all payments of . . . insurance premiums . . . ." Id. at ¶ 4(C).

As required under the terms of their Mortgage, the Ervings had maintained flood insurance on the Property for a period of time after obtaining the Mortgage (see SAC Ex. 10), but then allowed that insurance to lapse. Ignoring repeated communications advising them to obtain their own flood insurance, the Ervings did not procure their own coverage and Saxon obtained a lender-placed insurance ("LPI") policy on their behalf.

Shortly after the Modification Agreement, on October 8, 2010, Saxon sent a letter to the Ervings warning them that their flood LPI policy was soon expiring and would be renewed, at their expense, if the Ervings did not provide proof of insurance coverage. SAC Ex. 7. Saxon also informed the Ervings that "[t]he premium charged for this insurance coverage could be substantially greater than that charged through a standard insurance provider." Id. Despite these blunt disclosures, the Ervings failed to procure flood insurance and Saxon renewed their flood LPI policy on or about November 12, 2010. SAC Ex. 8.

When the Ervings' flood LPI policy came up for renewal in 2011, Saxon again warned them that the premium on the policy "may be much higher" than the insurance they could otherwise obtain. SAC Ex. 9. Saxon also urged them to "contact [their] agent, company or [American Bankers Insurance Company] and purchase coverage." Id. But the Ervings nevertheless failed to procure their own flood insurance and their flood LPI policy was renewed in November 2011. Id. On or about April 2, 2012, the servicing of the Ervings' loan was transferred from Saxon to Ocwen Loan Servicing LLC. SAC ¶ 89.

The Ervings assert six claims for relief against Saxon: Count I alleging violation of Section 1962(c) of RICO; Count II alleging conspiracy to violate RICO; Count III alleging

breach of contract; Count IV alleging unjust enrichment; Count VI alleging breach of fiduciary duty; and Count VIII alleging conversion. SAC ¶¶ 134-65, 172-79, 186-97. With the exception of the conversion claim, the Ervings assert the same claims against Morgan Stanley.

The Ervings purport to represent a national class of borrowers with mortgage loans serviced by Saxon and who were required to pay for lender-placed flood insurance. SAC ¶ 156. In the alternative, "to the extent deemed necessary by the Court," the Ervings request certification of a parallel flood class consisting of only Florida plaintiffs. SAC ¶ 156.

## ARGUMENT[4]

### THE ERVINGS' FLOOD INSURANCE CLAIMS FAIL TO STATE A CLAIM AND SHOULD BE DISMISSED

Each of the claims asserted in this action is also asserted in the Lyons action, and each should be dismissed for the reasons set forth in the Lyons Brief. Rather than burden the Court by making wholly duplicative arguments here, Saxon and Morgan Stanley respectfully refer the Court to the Lyons Brief for a discussion of the many grounds on which the claims in this action should be dismissed as well. See Exhibit A. The discussion below is limited to addressing those areas in which the LPI policy at issue (flood vs. hazard) could matter, and explains why the arguments for dismissal of the flood insurance claims are at least equally, if not more, compelling.

---

[4] In their motion to sever, filed January 21, 2014, Saxon and Morgan Stanley advised the Court that they intended to assert the filed-rate doctrine as a ground for dismissal when moving to dismiss the SAC pursuant to Rule 12(b)(6). ECF No. 70 at 1 n.1. In the interim, however, the Court denied a motion to dismiss filed by Assurant, Inc. ("Assurant") and ASIC pursuant to Rule 12(b)(1) (ECF No. 99). Under the circumstances, Saxon and Morgan Stanley will not brief the filed-rate doctrine other than to incorporate by reference the arguments made by Assurant and ASIC in their prior motion to dismiss in order to preserve the issue for appeal and avoid any claim of waiver by the Ervings should the Second Circuit rule, in Rothstein v. GMAC Mortgage LLC, Case No. 14-2250 (2d Cir.), that the filed-rate doctrine bars claims like those asserted here. Should the Second Circuit so rule, Saxon and Morgan Stanley will respectfully ask the Court to reconsider its ruling and hold that the filed-rate doctrine operates to bar all the claims asserted by the Ervings here.

### A. The Ervings' Allegation of Excessive Flood Insurance Coverage Is Futile

In the Lyons Brief, Saxon and Morgan Stanley establish that the Ervings' theory of excessive hazard LPI is belied by the relevant documents. The same is true with respect to their theory of excessive flood LPI. The exhibits annexed to the SAC show that for the period from November 1, 2010 through November 1, 2011, Saxon obtained $221,300 in flood LPI on the Ervings' behalf. SAC Ex. 8. When that coverage ended and the Ervings failed (once again) to obtain flood insurance on their own, Saxon obtained the same flood LPI for the period November 1, 2011 through November 1, 2012. SAC Ex. 9. Pursuant to the Modification Agreement, the principal balance of the Ervings' loan *exceeded* the amount of the flood LPI obtained. Gearns Decl., Ex. 3 at ¶ 3(B). Accordingly, the Ervings' claim that the flood LPI placed by Saxon exceeded the amount of their loan is unfounded and cannot support a claim for relief against Saxon.[5]

Moreover, contrary to what the Ervings suggest, neither the Mortgage nor the National Flood Insurance Act ("NFIA") limited Saxon to obtaining flood insurance in the amount of the outstanding principal balance of the loan. The Mortgage states that if the Ervings failed to maintain their own insurance, "Lender is under no obligation to purchase any particular type or amount of coverage." SAC Ex. 4 at ¶ 5. Further, the Mortgage authorized the Lender to "do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property." Id. at ¶ 9. For its part, the NFIA provides that flood insurance must be "in an amount at least equal to" the lesser of (1) the outstanding principal balance of the loan; and (2) the maximum limit of

---

[5] The $221,300 in flood insurance coverage that Saxon obtained is the same amount that the Ervings had independently purchased prior to allowing their flood insurance to lapse. SAC Ex. 10. Saxon expressly warned the Ervings that it would obtain the "greater of the minimum flood requirement or the last known insurance amount of your previous policy," and that if the Ervings "ha[d] information to verify that the amount should be different," to "please notify [Saxon]." SAC Ex. 8.

5

coverage under the Act (i.e., $250,000).  42 U.S.C. § 4012a(b)(1).  The "at least equal to" language in the NFIA thus sets a floor, but not a ceiling, for the amount of flood insurance that must be maintained.  For this reason too, the Ervings claims based on alleged "excessive coverage" should be dismissed.

The court's decision in Feaz v. Wells Fargo Bank, N.A., 745 F.3d 1098 (11th Cir. 2014), is instructive.  The court there considered whether the plaintiff's mortgage and the associated flood regulations (including the NFIA), permitted defendant to obtain flood LPI in an amount greater than the outstanding principal balance of the loan.  745 F.3d at 1100-01.  The court held that plaintiff's mortgage made the federally required flood insurance amount the minimum, not the maximum required.  See id. at 1101; accord Kolbe v. BAC Home Loans Servicing, LP, 738 F.3d 432 (1st Cir. 2013) (lead opinion of evenly divided en banc court); Swain v. Wells Fargo Bank, N.A., --- F. Supp. 3d ----, 2014 WL 4675363, at *4 (N.D. Ohio Sept. 18, 2014).

The court's holding in Feaz was based on, among other things, three principles that apply equally here.  First, the court reasoned that the mortgage at issue there, like the one here, provided that the lender may do and pay for whatever is necessary to "protect the value of the Property."  745 F.3d at 1106; see SAC Ex. 4 at ¶ 9 ("Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property . . . including protecting . . . the value of the Property").  The court recognized that the "lender's interest in a mortgage is not limited to the unpaid principal balance, but rather extends to the continued receipt of the interest payments over the lifetime of the loan."  Id. at 1107.

Second, the court concluded that the NFIA and certain HUD regulations also support its holding.  Both the NFIA and the HUD regulations explicitly state that flood insurance must be "at least" equal to the outstanding balance of the mortgage or the maximum amount available

6

under the National Flood Insurance Program, whichever is less. The court found that "[t]he words 'at least'" were consistent with interpreting plaintiff's mortgage "to allow the lender to require more insurance than HUD requires" and was "inconsistent with interpreting the covenant to prohibit more." Id.

Third, the court recognized that if a lender were limited to insuring the unpaid principal balance, "the lender would not be able to insure against the risk the regulatory scheme imposes because the cost of repairing the damage may exceed the unpaid balance of the loan, which would result in the lender having to pay more for repair than it could collect in insurance benefits." Id.

All three of those principles apply fully here. Accordingly, even if Saxon had obtained flood insurance in an amount greater than the unpaid principal balance (and it did not), that would not be sufficient to support the Ervings' claims.

### B. The Ervings' Allegation of Flood Insurance "Backdating" Is Futile

In the SAC, the Ervings allege only that Saxon ensured that there was continuous flood insurance coverage on the Property. SAC ¶ 81 (previous policy expiring November 1, 2010); ¶ 82 (policy effective November 1, 2010); ¶ 84 (policy effective November 1, 2011). An amendment to NFIA effective in 2013 clarified longstanding practices that permit a lender to ensure that continuous flood insurance exists on a property. 42 U.S.C. § 4012a(e)(2) (lender may charge borrower the cost of premiums "including premiums or fees incurred for coverage beginning on the date on which flood insurance coverage lapsed or did not provide a sufficient coverage amount"). Even if it were not the law (and it is), the importance of having uninterrupted flood insurance coverage is well-established and courts have rejected backdating theories as meritless. Cannon v. Wells Fargo Bank, N.A., 2013 WL 3388222, at *7 (N.D. Cal. July 5, 2013) (dismissing backdating claim in flood LPI case and agreeing that 2012 amendment

7

to the NFIA was intended to "clarify and codify longstanding practices that allow lenders and servicers to collect premiums and fees incurred for coverage beginning on the date an existing flood insurance policy lapsed or did not provide sufficient coverage") (quotation omitted).

## CONCLUSION

For the foregoing reasons and for those set forth in the <u>Lyons</u> Brief, attached hereto as Exhibit A, Saxon and Morgan Stanley respectfully request that the Court dismiss all claims asserted against them in the SAC, with prejudice, and grant such other and further relief it deems proper.

Dated:   New York, New York  
        February 20, 2015

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By:  /s/ Mary Gail Gearns
      Mary Gail Gearns  
Matthew Minerva  
Michael J. Ableson  
399 Park Avenue  
New York, New York 10022  
Tel:  (212) 705-7000  
Fax:  (212) 752-5378  
Email:  marygail.gearns@morganlewis.com  
Email:  matthew.minerva@morganlewis.com  
Email:  michael.ableson@morganlewis.com

*Attorneys for Defendants Saxon Mortgage Services, Inc. and Morgan Stanley*