IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN CLARIZIA, *et al.*, on behalf of themselves and all others similarly situated,<br>                      Plaintiffs,<br><br>      -v-<br><br>OCWEN FINANCIAL CORPORATION, *et al.*,<br>                      Defendants. | Civil Action No.  13 Civ. 02907 |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS FILED PURSUANT TO THIS COURT'S ORDER TO SHOW CAUSE**

Plaintiffs Frances and Johnny Erving (collectively, "Plaintiffs"), by their undersigned attorneys, respectfully submit this Memorandum of Law in Opposition to Defendants Saxon Mortgage Services, Inc. ("Saxon") and Morgan Stanley (together, the "Saxon Defendants"), and Assurant, Inc., and American Security Insurance Company's (collectively, the "Assurant Defendants") (the Saxon Defendants, with the Assurant Defendants, collectively "Defendants"), Motion to Dismiss Filed Pursuant to this Court's Order to Show Cause.

The lender placed insurance ("LPI") kickback scheme alleged here is nearly identical to the scheme described in Plaintiffs' Memorandum of Law In Opposition to Defendants' Motion to Dismiss Field Pursuant this Court's Order to Show Cause ("*Lyons* Opposition"), filed in the related action, *Lyons v. Litton Loan Servicing, LP*, Case No. 13-cv-0513 (S.D.N.Y.), and attached hereto as Exhibit A.  The only difference between the scheme alleged here, and the scheme alleged in *Lyons*, is that *Lyons* involves lender placed hazard insurance, and the claims here involve lender placed flood insurance.  Because there are no material differences between the claims pled against the Saxon Defendants and Assurant Defendants in *Lyons*, and the claims pled here, Plaintiffs incorporate by reference the facts and arguments in the *Lyons* Opposition.

## BACKGROUND

The original Complaint in this action was filed on April 30, 2013, and subsequently assigned to this Court as a related action. As in *Lyons,* Plaintiffs amended the Complaint twice to include additional plaintiffs and claims against additional defendants. On November 19, 2013, Plaintiffs filed the Second Amended Complaint ("SAC"), the operative complaint in this action. *See* ECF No. 60.

In the SAC, Plaintiffs allege that the Saxon Defendants and the Assurant Defendants engaged in a lender placed flood insurance kickback scheme under which the Assurant Defendants agreed to funnel a portion of the lender placed flood insurance charges back to the Saxon Defendants through cash payments disguised as "expense reimbursements," "commissions," "reinsurance," and/or other forms of consideration. Plaintiffs further alleged that Defendants improperly required more flood insurance coverage than required by federal law or the mortgage contracts ("over-insurance claim") and that Defendants improperly backdated force-placed flood insurance policies ("backdating claim"), but the Ervings subsequently stipulated to dismissing these theories of recovery. *See* ECF No. 112, fn. 2.

The Assurant Defendants moved to dismiss on filed rate grounds. As in *Lyons*, Plaintiffs argued that the filed rate doctrine does not apply because Plaintiffs do not challenge the rate itself; rather, Plaintiffs challenge Defendants unlawful conduct, and "[a]s numerous courts throughout the country have found in analogous situations, defendants' abuse of **mortgage servicers' limited rights** under mortgage contracts is not excused by the filed rate doctrine." *See* Memorandum of Law in Opposition to Motion to Dismiss by Defendants Assurant, Inc. and American Security Insurance Company, ECF No. 78, at 7-11 (emphasis in original). In the alternative, Plaintiffs also argued that Judge Nathan's decision in *Rothstein v. GMAC Mortgage, LLC*, No. 12-cv-3412, 2013 WL 5437648 (S.D.N.Y. Sept. 30, 2013) further supported denial of

the Assurant Defendants' motion because the insurers first sold the flood insurance to the mortgage servicer. *Id.* at 11-12. As in *Lyons*, the Court sided with Plaintiffs and held that the filed rate doctrine does not bar Plaintiffs' claims. *See* ECF No. 99. The Court also denied the Saxon Defendants and Assurant Defendants' motions to sever. *See* ECF No. 98.

On December 18, 2014, the Ervings and Clarizia entered into a nationwide class action settlement agreement in an overlapping class action pending in the Southern District of Florida captioned *Lee v. Ocwen Loan Servicing LLC*, Case No. 14-cv-60649 (S.D. Fla.) ("*Lee* Settlement"). The *Lee* Settlement, which received final approval on September 14, 2015, resolves the Ervings and Clarizia's claims asserted in this action concerning lender placed flood insurance purchased by Ocwen from the Assurant Defendants. *See Lee v. Ocwen Loan Servicing, LLC*, No. 14-cv-60649, 2015 WL 5449813 (S.D. Fla. Sept. 14, 2015). As such, the only claims remaining are the Ervings' claims concerning lender placed flood insurance purchased by the Saxon Defendants from the Assurant Defendants.

On July 22, 2015, the Second Circuit held that the filed rate doctrine applies "whether or not the rate is passed through an intermediary" if the claim "would undermine the regulator's rate-setting authority or operate to give the suing ratepayer a preferential rate." *Rothstein,* 794 F. 3d at 259. On September 29, 2015, this Court issued an Order to Show Cause why this action should not be dismissed on the ground that the filed rate doctrine precludes Plaintiffs' claims against both the Insurer and Loan Servicing Defendants, and this briefing followed. *See* ECF No. 121.

## ARGUMENT

As set forth in Plaintiffs' Memorandum of Law In Opposition to Motion to Dismiss Field Pursuant this Court's Order to Show Cause in the related action, *Lyons v. Litton Loan Servicing, LP,* Case No. 13-cv-0513 (S.D.N.Y.), attached as Exhibit A and incorporated by reference,

Defendants' kickback scheme involving illusory "reinsurance" arrangements, sham commission agreements and fake expense reimbursements goes far beyond the reach of the filed rate doctrine.

First, the charges that the Saxon Defendants are permitted to assess borrowers is governed by the borrowers' mortgage agreement, not the filed rate. That is distinct from the amount that the Assurant Defendants are permitted to charge the Saxon Defendants for lender placed insurance, which is a commercial product subject to regulation by the insurers' filed rate. In *Rothstein*, because the plaintiffs settled their claims against the mortgage servicer prior to the appeal, such claims were not at issue on appeal, and therefore, at most, the Second Circuit's *Rothstein* decision bears only upon claims brought by borrowers directly against insurers—not against mortgage servicers such as the Saxon Defendants.

Second, the form of the kickback is critical to any analysis. In *Rothstein,* the plaintiffs alleged only that the LPI provider provided the mortgage servicer with free loan tracking services. *Rothstein*, 794 F.3d at 262. The Second Circuit found that whether such tracking services were appropriately included in the LPI rates was a regulatory decision, and that a judicial determination that such services should not have been included in the LPI rates would violate the nonjusticiability principle. *Id.* at 262. Here, however, Plaintiffs are not arguing as to whether charges for reinsurance, commissions and/or expense reimbursements can appropriately be included in LPI premiums charged by insurers to mortgage servicers. Instead, Plaintiffs allege that Defendants schemed to disguise cash payments as reinsurance, commission, and expense reimbursements in order to make such payments appear to be authorized under borrowers' mortgage agreements, and that the Saxon Defendants breached the borrowers' mortgage agreements by assessing to borrowers more than just the cost to protect the lenders' interest in the borrowers' properties. The carefully crafted cash kickback schemes at issue in this

4

case are quite different than the mere provision of tracking services at issue in *Rothstein*. In fact, as Judge Lynch noted from the bench to the plaintiff's counsel during oral argument in *Rothstein*: "I would be inclined to agree with you, I think, if there was a straightforward cash kickback." *See Lyons* ECF No. 195-1, Exhibit A to the Declaration of Tyler S. Graden ("Graden Decl."), which contains a true and correct transcription of pertinent portions of the May 1, 2015 Oral Argument Hearing in *Rothstein v. Balboa Insurance Co.*, No. 14-cv-2250 (2d Cir.).

Third, in *Rothstein*, the plaintiffs did not challenge the conduct of the defendants, as Plaintiffs do here. As Plaintiffs previously noted, in the vast majority of LPI cases where courts have declined to apply the filed rate doctrine, they have noted that the doctrine does not apply where there is a challenge to conduct, as opposed to a challenge to the rate. *See Lyons* ECF No. 118, at 8-11. As the Third Circuit declared in *Alston v. Countrywide Financial Corporation*, 585 F.3d 753, 765 (3d Cir. 2009), "[i]t is absolutely clear that the filed rate doctrine simply does not apply" where the plaintiff challenges the defendants' "allegedly wrongful conduct, not the reasonableness or propriety of the rate that triggered that conduct." *Id.*

Fourth, in *Rothstein*, the Court did not examine the factual scenario presented here, where the LPI is "commercial lines" insurance sold to and covering commercial enterprises, as opposed to "personal lines" insurance sold to and covering individual consumers. Whether commercial lines insurance appropriately includes costs associated with certain mortgage servicing functions, or other business costs, is obviously a regulatory decision. However, the charges that the mortgage servicer may assess borrowers is governed by their contractual/business relationship – not by an insurance regulator setting a commercial rate. As such, the LPI here is not the "A-to-B-to-C transaction that implements a two-party-transaction between the insurer and the borrower" examined in *Rothstein*. *See Rothstein,* 794 F.3d at 265.

## CONCLUSION

Accordingly, Plaintiffs respectfully request that the Court enter an Order denying Defendants' Motion to Dismiss Filed Pursuant to this Court's Order to Show Cause in its entirety.

Dated: December 21, 2015                                      Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　　　　　　**KESSLER TOPAZ**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**MELTZER & CHECK, LLP**


　　　　　　　　　　　　　　　　　　　　　　By: /s/ *Peter A. Muhic*
　　　　　　　　　　　　　　　　　　　　　　　　　　Peter A. Muhic (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　　　　　Tyler S. Graden (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　　　　　280 King of Prussia Road
　　　　　　　　　　　　　　　　　　　　　　　　　　Radnor, PA 19087
　　　　　　　　　　　　　　　　　　　　　　　　　　Telephone: (610) 667-7706
　　　　　　　　　　　　　　　　　　　　　　　　　　Facsimile: (610) 667-7056

　　　　　　　　　　　　　　　　　　　　　　　　　　**LOWEY DANNENBERG**
　　　　　　　　　　　　　　　　　　　　　　　　　　**COHEN & HART, P.C**.
　　　　　　　　　　　　　　　　　　　　　　　　　　Barbara J. Hart (BH-3231)
　　　　　　　　　　　　　　　　　　　　　　　　　　David Harrison (DH-3834)
　　　　　　　　　　　　　　　　　　　　　　　　　　One North Broadway, Suite 509
　　　　　　　　　　　　　　　　　　　　　　　　　　White Plains, NY 10601-2301
　　　　　　　　　　　　　　　　　　　　　　　　　　Telephone: (914) 997-0500
　　　　　　　　　　　　　　　　　　　　　　　　　　Facsimile: (914) 997-0035

　　　　　　　　　　　　　　　　　　　　　　　　　　**BERGER & MONTAGUE, P.C**.
　　　　　　　　　　　　　　　　　　　　　　　　　　Shanon J. Carson (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　　　　　Patrick Madden (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　　　　　1622 Locust Street
　　　　　　　　　　　　　　　　　　　　　　　　　　Philadelphia, PA 19103
　　　　　　　　　　　　　　　　　　　　　　　　　　Telephone: (215) 875-4656
　　　　　　　　　　　　　　　　　　　　　　　　　　Fax: (215) 875-4604
　　　　　　　　　　　　　　　　　　　　　　　　　　Email: scarson@bm.net
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　pmadden@bm.net

　　　　　　　　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiffs and The Proposed Classes*

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of December, 2015, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

*/s/ Peter A. Muhic*
Peter A. Muhic
